FILED
CLERK

1/25/2016 10:06 am

U.S. DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------X
MAXIMINO RIVERA, MIGUEL ROLDAN,
and OSCAR QUINTANILLA, and all other non-
exempt employees similarly situated,

                       Plaintiffs,

              -against-

HARVEST BAKERY INC., ROBERT
MARCONTI, and JOSE GONZALEZ,

                   Defendants.
--------------------------------------------------------X

**MEMORANDUM OF
DECISION & ORDER**
13–CV–691 (ADS)(AYS)

## APPEARANCES:

**The Law Office of Peter A. Romero**
*Attorney for the Plaintiffs*
20 Irving Johnson Street
E. Northport, NY 11731
     By: Peter A. Romero, Esq., Of Counsel

**Zabell & Associates, P.C.**
*Attorneys for the Defendant*
1 Corporate Drive, Suite 103
Bohemia, NY 11716
    By: Saul D. Zabell, Esq., Of Counsel

**SPATT, District Judge**.

This case arises from allegations by the Plaintiffs Maximino Rivera, Miguel Roldan, and

Oscar Quintanilla (collectively, the "Plaintiffs") that the Defendants Harvest Bakery, Inc.

("Harvest Bakery"), Robert Marconti ("Marconti"), and Jose Gonzalez ("Gonzalez" and

collectively, the "Defendants") failed to pay their production workers overtime pay and spread of

hours wages in violation of the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq.* ("FLSA"),

and the New York Labor Law §§ 650, *et seq.* ("NYLL").

1

Presently before the Court is a motion by the Plaintiffs to certify a class action pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 23(b)(3) of "all persons who work or have worked for [the] Defendant in the State of New York at any time from the six (6) years prior to the filing of this complaint to the entry of judgment in the case."

For the reasons set forth below, the Court grants the Plaintiffs' motion.

## I. BACKGROUND

### A. Relevant Regulations

The Plaintiffs' primary basis for asserting that the proposed class meets the requirements of Fed. R. Civ. P. 23 is that the Defendants had a policy of not paying their production workers overtime pay or spread of hours wages. Accordingly, the Court finds it necessary to first provide a brief overview of the requirements under New York regulations for overtime and spread of hours wages.

As to overtime, New York regulations require qualifying employers to compensate employees for hours worked in excess of forty hours per work week at a rate not less than one-and-one-half times the regular rate of pay subject to certain exemptions not relevant here. 12 NYCRR § 142–2.2.

As to spread of hours, New York regulation requires that "[a]n employee . . . receive one hour's pay at the basic minimum hourly wage rate, in addition to the minimum wage required in this Part for any day in which . . . the spread of hours exceeds 10 hours." 12 NYCRR § 142-2.4. "Spread of hours" is, in turn, defined as "the interval between the beginning and end of an employee's workday" and "includes working time plus time off for meals plus intervals off duty." Id. at § 142-3.16. In other words, "an employer must pay an employee who works more than ten hours in one day an additional hour at the minimum wage." (See Mar. 5, 2014 Order,

2

Dkt. No. 67, at 16–17) (quoting parenthetically <u>Palacios v. Z & G Distributors, Inc.</u>, No. 11 CIV. 2538 AT FM, 2013 WL 4007590, at *3 (S.D.N.Y. Aug. 6, 2013)); <u>see also</u> <u>Shahriar v. Smith & Wollensky Rest. Grp., Inc.</u>, 659 F.3d 234, 242 (2d Cir. 2011) (noting that the spread of hours provision requires "employers to pay servers an extra hour's pay at the regular minimum wage for each day they work more than ten hours") (citing N.Y. Comp.Codes R. & Regs. tit. 12, § 137–1.7 (2010)).

## B. The Parties

### 1. The Defendants

The Defendant Harvest Bakery is a New York corporation with its principal place of business located in Central Islip, New York. (<u>See</u> Am. Compl., Dkt. No. 60, at ¶ 20; Answer, Dkt. No. 64, at ¶ 17.) It is a commercial bakery and has both a production and a storage facility. (<u>See</u> Am. Compl., Dkt. No. 60, at ¶ 2; Answer, Dkt. 64, at ¶ 2; Marconti Dep., Romero Decl., Ex. A, at Tr. 14:3–14.)

The Defendant Marconti is the President and Chief Executive Officer of Harvest Bakery and has authority to make payroll and personnel decisions. (<u>See</u> Am. Compl., Dkt. No. 60, at ¶¶ 23, 25; Answer, Dkt. No. 64, at ¶¶ 23, 25.)

The Defendant Gonzalez is a Vice President at Harvest Bakery who supervises the production employees and also has authority to make payroll and personnel decisions. (<u>See</u> Am. Compl., Dkt. No. 60, at ¶¶ 28–3-; Answer, Dkt. No. 64, at ¶¶ 28–30.)

Gonzalez and Marconti each own a fifty percent share of the Harvest Bakery. (Marconti Dep., Romero Decl., Ex. A, at Tr. 8:6–11.)

3

Currently, the Defendants employ twenty-eight employees, of which twenty-six are production workers who make the bakery goods sold by Harvest Bakery.  (See id. at Tr. 14:4–15:17.)  All of the production workers are hourly employees.  (Id. at Tr. 27:2–6.)

### 2. The Plaintiffs

#### a. Rivera

From June 2010 to December 2012, the Plaintiff Rivera was employed by the Defendants as a production worker.  (Rivera Decl., Dkt. No. 42-10, at ¶ 3.)  His primary duties were "baking and packaging bread, cleaning and washing bakeware, mopping and cleaning the premises, and unloading truck deliveries."  (Id. at ¶ 4.)  In June 2010, when he was hired by the Defendants, Rivera earned $7.25 per hour.  (See the Defs.' Responses to Rivera's First Set of Intergos., Dkt. No. 42–3, at ¶ 1.)  In July 2012, the Defendants increased his wages to $8.50 per hour.  (Id.)

According to a declaration filed in support of the Plaintiffs' present motion, Rivera usually worked from 5:00am to 10:00pm or seventeen hours per day, six days a week, which amounts to a total of 102 hours per week.  (Id. at ¶ 6.)  At his deposition, he testified as follows:

> Q. How many hours a week did you work?
> A. The truth is per day, sometimes I did more than 13, 14 hours.  That is why I don't know the amount, because there were just so many hours per week.

 (Rivera Dep., Zabell Decl., Ex. M, at Tr. 52:16–54:3.)

In his declaration and in his deposition, Rivera stated that despite the fact he often worked more than forty hours per week, he was never paid overtime wages for his work.  (See id. at Tr. 40:16–19; Rivera Decl., Dkt. No. 42–10, at ¶¶ 5, 8; Rivera's Responses to the Defs.' Second Set of Intergos, Dkt. No. 44-8, at ¶¶ 2–3.)  Further, in response to Rivera's interrogatories, the Defendants stated that they did not pay him "at a rate of 1.5 times his regular

rate for hours worked in excess of forty (40) hours per week." (See the Defs.' Responses to Rivera's First Set of Intergos., Dkt. No. 42–3, at ¶ 11.)

The Plaintiffs also offer a copy of an employee report supposedly generated by the Defendants which indicates when Rivera punched into and out of work. (See Romero Decl., Dkt. N. 42-6, Ex. E.) On the spreadsheet, the total number of hours listed for most of the days is greater than ten hours per day. (See id.)

In addition, from November 2012 to March 2013, Rivera was employed by Inner-Pak Container, Inc ("Inner-Pak"). (See Rivera's Responses to the Defs.' Fourth Set of Interogs., Dkt. No. 44–10, ¶ 1.) From November 2012 to December 2012, Rivera appears to have worked at both Inner-Pak and Harvest Bakery. It is not clear from the record what his role or regular hours were at Inner-Pak.

**b. Roldan**

From June 2011 to June 2013, the Plaintiff Roldan was employed by the Defendants as a production worker. (See Roldan Decl., Dkt. No. 15–3, at ¶ 3.) His primary job duties were "decorating and packaging bread and cookies, operating a machine that wrapped bread and cookies, cleaning and washing bakeware, mopping and cleaning the premises, and unloading truck deliveries." (Id. at ¶ 4.)

In addition, from November 2012 to March 2013, Roldan worked at Inner Pak. (See Roldan's Responses to the Defs.' Fourth Set of Interrogatories, Dkt. No. 44-9, at ¶ 1.) From March 2013 to April 2013, Roldan worked for JM Packaging. (See id.) Finally, from June 2013 to August 2013, he worked for PRC Industries, Inc. ("PRC Industries"). (See id.)

Therefore, from November 2012 to August 2013 — with the exception of May 2013 —, Roldan performed work for Harvest Bakery and for a second employer. (See id. at ¶ 7.)

5

According to a declaration filed in support of his motion for conditional certification of a collective action pursuant to FLSA § 216(b), from June 2011 to May 2012, Roldan typically worked at Harvest Bakery from 10:00am to 10pm, seven days per week, for a total of eighty-four hours per week. (Id. at ¶ 6.)  He also stated that the Defendants never paid him overtime wages. (Id. at ¶ 8.)

The Plaintiffs also offer a copy of a report purportedly prepared by the Defendants, which lists when Roldan punched into and out of work.  (See Romero Decl., Dkt. N. 42-7, Ex. F.)  The hours on the spreadsheet frequently exceed ten hours per day.  (See id.)

### c. Quintanilla

The Defendants represented in their discovery responses that from 2011 to 2013, they employed Quintanilla as a production worker.  (See the Defs.' Responses to Quintanilla's First Set of Interrogs, Dkt. No. 42–5, at ¶ 1.)  However, the report offered by the Plaintiffs, which lists when Quintanilla punched into and out of work, indicates that he worked at Harvest Bakery from February 9, 2012 to April 18, 2014.  (Romero Decl., Dkt. No. 42–8, Ex. G.)

Initially, when he was hired, the Defendants paid Quintanilla $7.25 per hour, and in July 2012, they increased his wages to $8.50 per hour.  (See the Defs.' Responses to Quintanilla's First Set of Interogs, Dkt. No. 42–5, at ¶ 1.)

On the issue of overtime, Quintanilla's testimony was somewhat inconsistent.  Initially, he testified as follows:

> Q. And did you receive the same amount of cash every week?
> A. Not the same amount, no. Because sometimes I put in fewer.
> Q. So when you worked many hours, you received more pay than when you worked fewer hours, correct?
> A. Yes, that is so.

(See Quintanilla Dep., Zabell Decl., Ex. N, at Tr. 11:6–14.).

However, later in his deposition, he maintained that the Defendants did not pay him

overtime:

> Q. And because you didn't get the raise, you decided to sue them, correct?
> A. Not the raise. It was the overtime that I didn't get paid for.

(Id. at Tr. 16:6–9.)  Subsequently, he added, "[F]rom 2011 until the beginning of 2013, I did not

receive overtime."  (Id. at Tr. 25:16–20.)

Quintanilla's employee report also shows that his hours consistently exceeded ten hours

per day.  (See Romero Decl., Dkt. No. 42–8, Ex. G.)

In discovery, the Defendants represented that Quintanilla was not paid "at a rate of 1.5

time his regular rate for hours worked in excess of forty (40) hours per week."  (See the Defs.'

Responses to Quintanilla's First Set of Interrogs, Dkt. No. 42–5, at ¶ 10.)  However, on October

22, 2013, Quintanilla signed a form acknowledging that his rate of pay was $8.50 and his

overtime rate of pay was $12.75.  (See Zabell Decl., Dkt. No. 44-7, Ex. G.)

**d. Rene Galvez**

Finally, non-party Rene Galvez ("Galvez") filed a declaration in support of the Plaintiffs'

present motion.  (See Galvez Decl., Dkt. No. 50-1.)  From December 2010 to April 2014, he

worked as a production worker for Harvest Bakery.  (See id. at ¶ 3.)  To that end, his primary

duties entailed "baking and packaging bread, cleaning and washing bakeware, mopping[,] and

cleaning the premises."  (Id.)  When he was hired, he was paid $7.25 per hour; later, on an

unspecified date, his wages were increased to $10.50 per hour.  (Id. at ¶ 6.)

He stated that he "usually worked from 5:00am to 9:00pm, Monday to Saturday[,] and

5:00am to 7:00pm on Sundays," which amounts to a total of 110 hours per week.  (See id. at ¶

5.)  However, according to his declaration, the Defendants never paid him "overtime

compensation at the rate of one and one-half times [his] regular hourly rate of pay for hours

worked in excess of forty hours per week."  (Id. at ¶ 9.)

## C. The Testimony Regarding the Defendants' Payroll Policies

Neither party points to any written policies implemented by the Defendants with respect

to payroll, overtime, or spread of hours wages.

Marconti testified that the Defendants used a "time card system" to keep track of the

hours that their employees worked.  (Marconti Dep., Romero Decl., Ex. A, at Tr. 31:2–9.)  Under

this system, "[e]mployees scan their card to punch in and scan it to punch out."  (Id.)

Marconti further testified that the pay period for production workers started on Thursday

and ended on a Monday of the following week.  (Id. at Tr. 31:10–15.)  In response to

interrogatories from the named Plaintiffs, the Defendants represented that they paid the Plaintiffs

weekly paychecks and cash in compensation for the hours that they worked in any particular

week.  (See the Defs.' Responses to Rivera's First Set of Interrogs., Dkt. No. 42–3, at ¶ 12; the

Defs.' Responses to Roldan's First Set of Interrogs., Dkt. No. 42–4, at ¶ 2; the Defs.' Responses

to Quintanilla's First Set of Interrogs., Dkt. No. 42–5, at ¶ 11.)  It is not clear whether the

Defendants also adopted this practice with respect to other production workers.

With regard to the issue of overtime, Marconti testified as follows:

Q. Plaintiff Rivera worked more than forty hours in some workweeks; is that
right?
A. Yes.
[…]
Q. Mr. Marconti, am I correct that prior to the commencement of this lawsuit, that
none of the hourly employees at Harvest Bakery were paid time and one half their
regular rate of pay for hours worked in excess of forty?
[…]
A. Yes.
[…]
Q. Mr. Marconti, showing you what's been marked Plaintiff's Exhibit Number 6,
which I'll represent to you are the time records produced by Harvest Bakery in

response to our request related to Miguel Roldan.  And just looking at the exhibit,
can you tell me did Mr. Roldan work more than forty hours in some workweeks?
A. In some workweeks, yes.
Q. Prior to the commencement of this lawsuit, did other hourly paid employees
work more than forty hours in a workweek?
[…]
A. I would have to back and look at their time records to see.

(Marconti Dep., Romero Decl., Ex. A, at Tr. 31:21–40:9; Marconti Dep., Zabell Decl., Ex. N, at

Tr. 40:15–42:22.)

**D. The Procedural Background**

On February 6, 2013, the Plaintiff Rivera commenced this action against the Defendants

asserting that the Defendants:  (i) failed pay him overtime in violation of FLSA § 207(a)(1); (ii)

failed to pay him overtime in violation of Section 142–2.2 of Title 12 of the New York Code of

Rules and Regulations ("NYCRR"); (iii) failed to pay him the federal minimum wage as set forth

in FLSA § 206(a)(1); (iv) failed to pay him the New York minimum wage as set forth in Section

146-1.2 of Title 12 of the NYCRR; (v) failed to pay him spread of hours wages in violation of

Section 142-2.4 of Title 12 of the NYCRR; and (vi) failed to comply with the notice and record-

keeping requirements set forth in NYLL § 195.  (See Compl. at ¶¶ 63–94.)

On March 7, 2013, the Defendants filed an answer to the complaint. (See Answer, Dkt.

No. 6.)

Also on March 7, 2013, the Defendants served an offer of judgment on Rivera pursuant

to Fed. R. Civ. P. 68.  (See Zabell Decl., Dkt. No. 44–1, Ex. A.)  Rule 68(a) states, "At least 14

days before the date set for trial, a party defending against a claim may serve on an opposing

party an offer to allow judgment on specified terms, with the costs then accrued."  The offer was

for a judgment in the amount of $7,500, including recoverable costs and fees, and required

Rivera to accept the offer within ten days.  (See id.)

It is undisputed that Rivera never accepted the Defendants' offer of judgment.  (See the Defs.' Opp'n Mem. of Law, Dkt. No. 45, at 7–9; the Pls.' Reply Mem. of Law, Dkt. No. 49, at 1.)

On November 8, 2013, Rivera filed a motion to conditionally certify a collective action pursuant to FLSA § 216(b) of "[a]ll non-exempt employees of Defendants . . . who performed duties, including but not limited to, assisting in packing and baking, cleaning bake-ware, maintaining and cleaning the premises, and unloading truck deliveries at any time during the three (3) years prior to the filing of their respective consent forms."  (See the Pls.' Mem. of Law, Dkt. No. 16, at 2.)

On May 20, 2013, the Defendants served an amended offer of judgment on Rivera pursuant to Fed. R. Civ. P. 68 for $8,600, excluding recoverable costs and fees.  (See Zabell Decl., Dkt. No. 44–2, Ex. B.)

Again, Rivera did not accept the Defendants' offer of judgment.  (See the Defs.' Opp'n Mem. of Law, Dkt. No. 45, at 7–9; the Pls.' Reply Mem. of Law, Dkt. No. 49, at 1.)

On June 18, 2013, Roldan filed a consent form to become part of the collective action pursuant to FLSA § 216.  (See Roldan Consent, Dkt. No. 11.)

On July 7, 2014, United States Magistrate Judge Gary R. Brown rendered a decision granting Rivera's motion to conditionally certify a collective action pursuant to FLSA § 216(b). (See Order, Dkt. No. 24, at 8–9.)

On September 6, 2014, Quintanilla filed a consent form to become part of the collective action.  (See Quintanilla Consent, Dkt. No. 27.)

On October 4, 2014, the deadline to opt into the collective action expired.  (See Order, Dkt. No. 59, at 7–8.)

10

On December 8, 2014, the Defendants served an offer of judgment on Roldan pursuant to Fed. R. Civ. P. 68 for $7,500, excluding recoverable costs and fees.  (See Zabell Decl., Dkt. No. 44–3, Ex. C.)  Also on December 8, 2014, the Defendants served an offer of judgment on Quintanilla pursuant to Fed. R. Civ. P. 68 for $8,600, excluding recoverable fees and costs. (Zabell Decl., Dkt. No. 44–4, Ex. D.)

Both Roldan and Quintanilla chose not to accept the Defendants' offers.  (See the Defs.' Opp'n Mem. of Law, Dkt. No. 45, at 7–9; the Pls.' Reply Mem. of Law, Dkt. No. 49, at 1.)

On September 18, 2015, this Court granted a motion by Rivera to amend the complaint to add Roldan and Quintanilla as named Plaintiffs in this action.  (See Order, Dkt. No. 59.)

On May 1, 2015, nearly six months after the opt-in period ended, Galvez filed a notice of consent to opt-into the collective action.  (See Galvez Consent, Dkt. No. 48.)

On October 9, 2015, the Plaintiffs filed an amended complaint.  (See Am. Compl., Dkt. No. 60.)

On October 29, 2015, the Defendants filed an answer to the amended complaint.  (See Answer, Dkt. No. 64.)

**E. The Present Motion**

As noted, presently before the Court is the Plaintiffs' motion to certify a class action pursuant to Fed. R. Civ. P. 23(b)(3).  The amended complaint defines the proposed class as "all persons who work or have worked for [Harvest Bakery] at any time from the six (6) years prior to the filing of this complaint to the entry of judgment in this case."  (Am. Compl., Dkt. No. 60, at ¶ 57.)  The Plaintiffs assert that the proposed class meets the requirements of Rule 23(a) and (b)(3) primarily because they assert that the Defendants had a common policy of denying their

employees overtime pursuant to Section 142–2.2 of Title 12 of the NYCRR and spread of hours wages pursuant to Section 142-2.4 of Title 12 of the NYCRR.  (See id. at ¶ 61.)

The Defendants oppose certification, asserting that (i) the Plaintiffs' motion is premature because discovery has not been completed; (ii) the class action has been rendered moot by the Rule 68 offers of judgment that they made to the named Plaintiffs; and (iii) the Plaintiffs have failed to show, by a preponderance of evidence, that the proposed class meets the requirements of Rule 23(a) and (b)(3).   (See the Defs.' Opp'n  Mem. of Law, Dkt. No. 10–19.)

In reply, the Plaintiffs assert that (i) their motion is not pre-mature; (ii) their claims are not moot; and (iii) the proposed class meets the requirements of Rule 23(a) and (b)(3).  (See the Pls.' Reply Mem. of Law, Dkt. No. 49, at 3–15.)

Below, the Court will address the parties' respective positions.

## II. DISCUSSION

### A. The Legal Standards

A class action may only be certified if it meets the following requirements set forth in Fed. R. Civ. P. 23(a):  (1) "the class is so numerous that joinder of all members is impracticable," known as "numerosity"; (2) "there are questions of law or fact common to the class," known as "commonality"; (3) "the claims or defenses of the representative parties are typical of the claims or defenses of the class," known as "typicality"; and (4) "the representative parties will fairly and adequately protect the interests of the class," known as "adequacy of representation."

In addition to these four requirements, a class must meet one of the three standards set forth in Fed. R. Civ. P. 23(b).  Here, the Plaintiffs seek to certify a class under Rule 23(b)(3), which requires that:  (i) "the questions of law or fact common to class members predominate over any questions affecting only individual members," also referred to as the "predominance"

requirement; (ii) and "the class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy," also known as the "superiority" requirement.

"The party seeking class certification bears the burden of establishing by a preponderance of the evidence that each of Rule 23's requirements has been met." Myers v. Hertz Corp., 624 F.3d 537, 547 (2d Cir. 2010). In addition, a class may be certified only if, "after a rigorous analysis," the district court determines that all of the relevant requirements of Rule 23 have been satisfied. See Comcast Corp. v. Behrend, 133 S. Ct. 1426, 1432, 185 L. Ed. 2d 515 (2013) ("[C]ertification is proper only if 'the trial court is satisfied, after a rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied.' . . . . The same analytical principles govern Rule 23(b).") (quoting Wal–Mart Stores, Inc. v. Dukes, 564 U.S. ——, ——, 131 S.Ct. 2541, 2551–2552, 180 L.Ed.2d 374 (2011)).

Such an analysis will often "entail some overlap with the merits of the plaintiff's underlying claim." Dukes, 131 S. Ct. at 2551; accord Teamsters Local 445 Freight Div. Pension Fund v. Bombardier Inc., 546 F.3d 196, 202 (2d Cir. 2008) ("'[T]he obligation to make such [factual] determinations is not lessened by overlap between a Rule 23 requirement and a merits issue, even a merits issue that is identical with a Rule 23 requirement.'") (In re Initial Pub. Offerings Sec. Litig., 471 F.3d 24, 41 (2d Cir. 2006)).

## B. As to Whether the Plaintiffs' Motion is Premature

As an initial matter, the Defendants assert that the Plaintiffs' motion is premature because they filed the motion before the Plaintiff Roldan was deposed. (The Defs.' Opp'n Mem. of Law, Dkt. No. 45, at 2–3.) In addition, they assert that the Plaintiffs' motion is "largely predicated upon factual assertions that are misleading and disingenuous" because the Plaintiffs omitted what

they contend to be relevant portions of Marconti's deposition transcript.  (Id.)  On these bases, the Defendants assert that the Court should deny the Plaintiffs' motion.   (See id.)

In response, the Plaintiffs assert that (i) the Defendants offer no legal authority to support their position that their motion can be denied because it is "premature" or because they omitted portions of an individual's deposition testimony from their papers; and (ii) their motion is not "premature" because they filed it after the parties had exchanged significant document discovery and taken the depositions of Marconti, the Defendant's principal owner, and two of the named Plaintiffs.  (See the Pls.' Reply Mem. of Law, Dkt. No. 49, at 3.)  The Court agrees.

The Defendants offer no legal authority to support their proposition that a movant can only make a motion for class certification under Rule 23 after discovery has been completed. Rule 23 does not contain a requirement as to when a motion for certification can be made, nor has the Court identified any cases adopting such a requirement.

To the contrary, as noted above, a district court can certify a class action so long as it finds that the movant has satisfied their burden of proving, by a preponderance of evidence, that the proposed class meets the requirements of Rule 23.   See Myers, 624 F.3d at 547.  While a movant who moves early in discovery may risk the denial of his or her motion for failure to produce enough evidence to warrant certification, there is no basis for denying a movant's solely on the basis of when he or she moved to certify the class.  Accordingly, the Court finds the Defendants' contention that the Court should deny the Plaintiffs' motion as premature to be without merit.

The Defendants also offer no support for their proposition that the Plaintiffs' motion "is largely predicated upon factual assertions that are misleading and disingenuous."  (See the Defs.' Opp'n Mem. of Law, Dkt. No. 45, at 2.)  The fact that the Plaintiffs submitted only portions of

Marconti's deposition transcript which they deem relevant does not make their motion disingenuous or misleading.  There is nothing in the Federal Rules or the Local Civil Rules which prevents the parties from submitting only the portions of the deposition testimony which they rely on in their motions.  Even if there was such as a requirement, there is nothing in Rule 23 or the case law to suggest that the Court could deny a motion for certification on that basis alone.

Accordingly, the Court also finds the Defendants' contention that the Court should deny the Plaintiffs' motion because they omitted certain portions of Marconti's deposition testimony to be unpersuasive.

## C. As to Whether the Plaintiffs' Motion is Moot

The Defendants also assert that the undisputed fact that they made Rule 68 offers of judgment to each of the three named Plaintiffs rendered their individual claims moot because the offers covered "all damages to which [the] Plaintiffs could potentially recover at the time the offers were extended."  (The Defs.' Opp'n Mem. of Law, Dkt. No. 45, at 8.)

In response, the Plaintiffs assert that: (i) their claims are not moot because the Court has not yet entered a judgment in this case; (ii) the Court cannot enter a Rule 68 judgment in this matter because the Defendants have not offered any evidence to suggest that their offers afforded the Plaintiffs the maximum amount of damages that they are entitled to recover under the FLSA and NYLL; and (iii) even if the Plaintiffs' individual claims are moot, their class claims are not and therefore, denial of their motion for certification is inappropriate.  (See the Pls.' Reply Mem. of Law, Dkt. No. 45, at 6–9.)

The Court agrees as to the Plaintiffs' first two arguments and therefore, need not reach their third argument.

15

"The Case or Controversy Clause of Article III, Section 2 of the United States Constitution limits the subject matter jurisdiction of the federal courts such that the 'parties must continue to have a personal stake in the outcome of the lawsuit.'" United States v. Wiltshire, 772 F.3d 976, 978 (2d Cir. 2014) (quoting Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477–78, 110 S.Ct. 1249, 108 L.Ed.2d 400 (1990)).  Stated another way, "[w]hen the issues in dispute between the parties are no longer 'live,' a case becomes moot, . . . , and the court — whether trial, appellate, or Supreme — loses jurisdiction over the suit, which therefore must be dismissed." Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ., 397 F.3d 77, 84 (2d Cir. 2005) (internal quotation marks and citations omitted).

Fed. R. Civ. P. 68(a) provides that "[a]t least 14 days before the date set for trial, a party defending against a claim may serve on an opposing party an offer to allow judgment on specified terms, with the costs then accrued."  Further, "[i]f, within 14 days after being served, the opposing party serves written notice accepting the offer, either party may then file the offer and notice of acceptance, plus proof of service. The clerk must then enter judgment." Fed. R. Civ. P. 68(a).

However, if the offeree does not accept a defendant's offer of judgment, the offer is "considered withdrawn" and "[e]vidence of an unaccepted offer is not admissible except in a proceeding to determine costs."  Id. at 68(b).  In addition, if the case proceeds to trial and "the judgment that the offeree finally obtains is not more favorable than the unaccepted offer, [then] the offeree must pay the costs incurred after the offer was made[.]"  Id. at 68(d).  "The purpose of Rule 68 according to the Supreme Court is 'to encourage settlement and avoid litigation.'" Tanasi v. New All. Bank, 786 F.3d 195, 198 (2d Cir. 2015) (quoting Marek v. Chesny, 473 U.S. 1, 5, 105 S. Ct. 3012, 87 L.Ed.2d 1 (1985)).

In support of their mootness argument, the Defendants rely on <u>Genesis Healthcare Corp.</u> <u>v. Symczyk</u>, 133 S. Ct. 1523, 185 L. Ed. 2d 636 (2013).  There, the movant, a registered nurse, brought suit against the defendants, her former employers, alleging that they "violated the FLSA by automatically deducting 30 minutes of time worked per shift for meal breaks for certain employees, even when the employees performed compensable work during those breaks."  <u>Id.</u> at 1527.  The defendants filed an answer and a Rule 68 offer of judgment at the same time.  <u>See id.</u> After the plaintiff failed to respond to the offer, the defendants filed a motion to dismiss the complaint for lack of subject matter jurisdiction, arguing that because they offered the plaintiff complete relief on her claims, her claims were moot.  <u>See id.</u>  The district court granted the defendants' motion, finding that the Rule 68 offer fully satisfied her individual claims.  <u>See id.</u> The court of appeals reversed, holding that although the plaintiff's claim was moot, the collective action was not moot because the court found that permitting "the calculated attempts by some defendants to 'pick off' named plaintiffs with strategic Rule 68 offers before certification could short circuit the process, and, thereby, frustrate the goals of collective actions."  <u>Id.</u>

On appeal, the Supreme Court in <u>Genesis</u> left open the question of whether "an unaccepted offer that fully satisfies a plaintiff's claim is sufficient to render the claim moot."  <u>Id.</u> at 1528–29.  Rather, the Court assumed, without deciding, that the district court and the Third Circuit were correct in ruling that the defendants' unaccepted offer of judgment fully satisfied the plaintiff's claim and rendered it moot.  <u>See id.</u>

However, the Court reversed the Third Circuit's decision denying the defendants' motion to dismiss because it found that the Third Circuit was incorrect in ruling that "the mere presence of collective-action allegations in the complaint can[] save the suit from mootness once the individual claim is satisfied."  <u>Id.</u> at 1529.  In so doing, the court distinguished cases involving

collective actions from those involving Rule 23 class actions because "a putative class acquires an independent legal status once it is certified under Rule 23," and an FLSA collective action, by contrast, "does not produce a class with an independent legal status, or join additional parties to the action." Id. Rather, "[t]he sole consequence of conditional certification is the sending of court-approved written notice to employees." Id. Thus, the Court suggested that once an individual plaintiff's individual claims are rendered moot, the fact that a collective action had previously been conditionally certified would not save his or her claims. See id.

The Defendants contend that the Rule 68 offers of judgments made by the Defendants to each of the named Plaintiffs constituted the complete relief to which they were entitled. (The Defs.' Opp'n Mem. of Law, Dkt. No. 45, at 6–7.) Therefore, applying the rule in Genesis to the facts of this case, the Defendants contend that Plaintiffs' individual claims were mooted by their Rule 68 offers of judgment and as a result, their class action claims are also moot and should be dismissed for lack of subject matter jurisdiction. (The Defs.' Opp'n Mem. of Law, Dkt. No. 45, at 6–7.) Again, the Court disagrees for two reasons.

First, as the Plaintiffs correctly note, it is now well-established in this Circuit that an unaccepted Rule 68 Offer of Judgment does not, by itself, render a claim moot until the district court enters a judgment in the case. Recently, the Second Circuit in Tanasi v. New All. Bank, supra, re-affirmed this principle. In that case, the plaintiff filed a nationwide class complaint against the defendants, a bank and its predecessor in interest, seeking "money damages arising from the purportedly improper assessment of overdraft fees on his account and the accounts of others similarly situated." 786 F.3d at 197. The defendants served a Rule 68 offer of judgment on the plaintiff, which "exceeded the individual damages to which [the plaintiff] would have been entitled had he prevailed on the individual claims alleged in his complaint." Id. At the time

18

of the offer, the plaintiff had not yet made a formal motion to certify a class action pursuant to Rule 23.  See id.  When the offer lapsed, the defendants moved to dismiss the class action for lack of subject matter jurisdiction because they asserted that the action was rendered moot by their Rule 68 offer of judgment to the plaintiff.  See id. at 198.  The district court denied the plaintiff's motion and "concluded that although the unaccepted Rule 68 offer rendered [the plaintiff's] individual claims moot, his putative Rule 23 class action claims nevertheless remained justiciable."  Id.

On appeal, the Second Circuit disagreed with the district court's conclusion that the unaccepted Rule 68 offer, by itself, rendered the plaintiff's individual claims moot.  See id. at 199.  In so doing, it clarified that "an unaccepted Rule 68 offer alone does not render a plaintiff's individual claims moot before the entry of judgment against the defendants."  Id. at 197.  Because the district court "had not yet entered judgment against the defendant when it reached its decision on the motion to dismiss," the court found that the plaintiff's individual claims were not rendered moot by the defendant's offer of judgment.  Id. at 200.  Accordingly, the court affirmed the district court's decision to deny the motion to dismiss, though it did so on an alternative ground.  Id. at 197.

The Court finds Tanasi — in which the court had not entered judgment on the plaintiff's claims — is applicable to this case and not Genesis — in which the Supreme Court assumed without deciding that the plaintiff's claims were moot.  That is because, here, the Plaintiffs did not consent to a judgment being entered, and the Defendants' offers of judgment lapsed without the Court entering judgment on any of the Plaintiffs' individual claims.  Tanasi made clear that because no judgment has been entered in this case, the Plaintiff's "claims [are] not rendered

19

moot, in the constitutional sense, by the unaccepted Rule 68 offer[s]."  786 F.3d at 200–01.  For

that reason, the Court finds that the Plaintiffs' mootness argument is without merit.

Second, the Court finds that the Defendants' mootness argument fails for the additional

reason that they have provided no basis to believe that their Rule 68 offers of judgment afforded

complete relief to the Plaintiffs on their individual claims.

When a defendant makes a Rule 68 offer of judgment, the Second Circuit has held that

district courts may only enter judgment without the consent of the plaintiff if the offer tenders

"complete relief" to the plaintiff.  See Tanasi, 786 F.3d at 200 ("Absent such agreement

[between the parties], however, the district court should not enter judgment against the defendant

if it does not provide complete relief."); Hepler v. Abercrombie & Fitch Co., 607 F. App'x 91, 92

(2d Cir. 2015) ("If the offer tenders complete relief, the court should (absent additional

procedural complications) enter judgment pursuant to the terms of that offer, with or without the

plaintiff's consent.") (emphasis in original) (Summary Order).

It necessarily follows that where there are disputes as to whether an offer of judgment

affords complete relief on the plaintiff's claims, the controversy between the parties is still "live"

and therefore, a defendant's offer of judgment cannot render the plaintiff's individual claims

moot.  See Cabala v. Crowley, 736 F.3d 226, 229 (2d Cir. 2013) ("Because the parties continued

to dispute the form and extent of the relief to which Cabala was entitled, the case never became

moot."); Anjum v. J.C. Penney Co., No. 13 CV 0460 (RJD) (RER), 2014 WL 5090018, at *11

(E.D.N.Y. Oct. 9, 2014) ("While the value of the plaintiff's stake remains a contested question, it

is hard to see how the underlying controversy can be considered dead."); Reyes v. Carnival

Corp., No. 04-21861-CIV, 2005 WL 4891058, at *3 (S.D. Fla. May 25, 2005) ("Since the

Plaintiff has rejected Carnival's offer and there is no basis for me to conclude that the offer of

judgment is definitively for more than the Plaintiff could recover at trial, I conclude that a live controversy remains pending.").

Here, the Defendants served two Rule 68 offers of Judgment on Rivera: on March 7, 2013, they offered him $7,500, which included "recoverable fees and costs"; and on May 20, 2013, they offered him $8,600, in addition to "recoverable fees and costs."  (See Zabell Decl., Dkt. No. 44, Exs. A, B.)  On December 8, 2014, the Defendants served an offer of judgment on Roldan for $7,500, in addition to "recoverable fees and costs"; and on the same day, they served an offer of judgment on Quintanilla for $8,600, in addition to "recoverable fees and costs." (See id. at Exs. C, D.)

In their legal memorandum, the Defendants assert that their Rule 68 offers of judgment "satisfied all damages to which [the] Plaintiffs could potentially recover at the time the offers were extended."  (The Defs.' Opp'n Mem. of Law, Dkt. No. 45, at 8.)  However, the only evidence they offer to support this assertion are conclusory statements in a declaration filed by Saul Zabell, Esq., the Defendants' attorney, stating that "based upon [the] Defendants' calculations," their offers of judgment satisfied all the damages to which the Plaintiffs are entitled.  (See Zabel Decl., Dkt. No. 44, at ¶¶ 2–4.)

There is nothing in the Rule 68 offers which explain how the Defendants calculated the maximum amount of the Plaintiffs' damages.  Furthermore, damages are not capped for the Plaintiffs' overtime or spread of hours claims, and the parties appear to dispute whether and how many overtime hours the Plaintiffs worked.  Thus, the Court is unable to determine whether the Defendants' Rule 68 offers afford the Plaintiffs complete relief on their claims.   Therefore, the controversy between the parties is still "live," and the Plaintiffs' claims are not rendered moot by the Defendants' offers of judgment.

The district court cases cited by the Defendants are not to the contrary.  For example, in Lary v. Rexall Sundown, Inc., 74 F. Supp. 3d 540, 553 (E.D.N.Y. 2015), the plaintiff brought class action claims under the Telephone Consumer Protection Act ("TCPA"), as amended by the Junk Fax Protection Act ("JFPA"), 47 U.S.C. § 227, which prohibits any person who uses "any telephone facsimile machine, computer, or other device to send, to a telephone facsimile machine, an unsolicited advertisement."  Under the TCPA, individual monetary damages are capped at $500, and the court may in its discretion award treble damages if it finds willful or knowing conduct on the part of the defendant. See id.  The Court agreed that the defendant's offer of judgment for $3,500 exceeded the maximum amount of relief that the plaintiff could otherwise recover, and the court granted judgment in favor of the plaintiff and dismissed the action as moot.  See id. at 554–57.

By contrast, here, as noted above, the Plaintiffs' damages are not capped, and the Defendants have provided no basis to believe that their offers of judgment afford complete relief to the Plaintiffs.  Accordingly, the Plaintiffs' claims have not been mooted by the Defendants' Rule 68 offers of judgment, and the Court does not find the decision in Lary applicable to this case.

The Defendants also cite to Franco v. Allied Interstate LLC, No. 13 CIV. 4053 (KBF), 2014 WL 1329168, at *1 (S.D.N.Y. Apr. 2, 2014) and Hepler v. Abercrombie & Fitch Co., 54 F. Supp. 3d 221 (E.D.N.Y. 2014) — two cases in which district courts dismissed class actions in light of the defendants' Rule 68 offers of judgment.

However, the Second Circuit reversed both Franco and Hepler on appeal because the district courts had not entered judgments prior to dismissing the parties' claims, and therefore, the Second Circuit found that under Tanasi, the plaintiffs' individual claims were not rendered

moot by the defendants' Rule 68 offers of judgments.  See Franco v. Allied Interstate LLC, 602 F. App'x 40, 41 (2d Cir. 2015) (Summary Order) ("On *de novo* review of the district court's determination of mootness, . . . , we identify error in light of our most recent controlling precedent, Tanasi v. New Alliance Bank, ⸺ F.3d ⸺, No. 14–1389–cv, 2015 WL 2251472 (2d Cir. May 14, 2015).  Tanasi makes clear that Franco's individual claim was not mooted by defendant's Rule 68 offer, which did not result in the entry of any judgment against the defendant."); Hepler, 607 F. App'x at 93 (2d Cir. 2015) ("In light of the foregoing, the district court erred by dismissing the case for lack of subject matter jurisdiction based on Abercrombie's unaccepted offers of judgment to Hepler and Marceau. Accordingly, we vacate and remand for further proceedings consistent with this summary order.").

Thus, the Second Circuit's summary orders in Hepler and Franco support the Court's rejection of the Defendants' mootness argument because, as noted earlier, the Court has not entered judgment on any of the Plaintiffs' claims, and therefore, those claims are not moot, as the Defendants contend.

In sum, the Court finds the Defendants' Rule 68 offers of judgment did not render the Plaintiffs' claims moot, and therefore, the Court is not persuaded by the Defendants' argument that the Plaintiffs' motion should be denied on that basis.

The Court will now address whether the proposed class satisfied the requirements of Rule 23(a) and (b).

**D. As to the Class Definition**

It is well-established that "[t]he court may, in its discretion . . . modify the definition of the proposed class to provide the necessary precision or to correct other deficiencies.  In fact, the court has a duty to ensure that the class is properly constituted and has broad discretion to

modify the class definition as appropriate to provide the necessary precision." Morangelli v. Chemed Corp., 275 F.R.D. 99, 114 (E.D.N.Y. 2011) (quoting 5 James W. Moore et al., Moore's Federal Practice § 23.21[6])); see also Robidoux v. Celani, 987 F.2d 931, 937 (2d Cir. 1993) ("A court is not bound by the class definition proposed in the complaint and should not dismiss the action simply because the complaint seeks to define the class too broadly.")

The Plaintiffs defined the proposed class as "all persons who work or have worked for [the] Defendant [Harvest Bakery] in the State of New York at any time from the six (6) years prior to the filing of this complaint to the entry of judgment in the case." (Am. Compl., Dkt. No. 60, at ¶ 57.)

Marconti, the Chief Executive Officer of Harvest Bakery, testified that Harvest Bakery currently has approximately twenty-eight employees, excluding him and Gonzalez. (See Maconti Dep., Romero Decl., Ex. A, at Tr. 14:15–15:10.) He stated two of the employees were a secretary and a buyer, and he could not specify whether they earned an hourly wage. (Id. at Tr. 15:15–23.) The remaining twenty-six employees were production workers, all of whom were paid hourly wages. (Id. at Tr. 27:2–14.)

The claims of the proposed class are predicated on allegations that the Defendants had a practice of not paying hourly workers the overtime and spread of hours wages they were entitled to under the NYLL: "[I]n this case, it is undisputed that [the] Plaintiffs and bakery production workers were non-exempt employees entitled to overtime pay hours worked in excess of forty hours per week." (The Pls.' Reply Mem. of Law, Dkt. No. 49, at 2.)

However, the proposed class definition refers broadly to "all person who work or have worked" for Harvest Bakery and thus, includes current and former employees, such as secretaries and buyers, who may not have been hourly employees and who may have been exempt from the

24

overtime and spread of hours regulations.  In this respect, the class definition is overbroad and might threaten to undermine the commonality and typicality requirements discussed below.

Rather than dismiss the action on that basis, the Court, in its discretion, amends the class definition as follows, "all current and former non-exempt hourly employees who worked for the Harvest Bakery in the State of New York at any time from the six (6) years prior to the filing of this complaint to the entry of judgment in the case."  This definition makes clear that the class consists solely of hourly employees and not salaried employees to whom the overtime and spread of hours regulations do not apply.

### E. As to Whether the Proposed Class Satisfies Rule 23(a)

As noted above, the Plaintiffs must establish, by a preponderance of the evidence, that the proposed class meets each of the four Rule 23(a) requirements — namely, numerosity, commonality, typicality, adequacy of representation — and the two requirements of Rule 23(b)(3) — namely, predominance and superiority.  The Court will address each requirement, in turn.

#### 1. Numerosity

Rule 23(a)(1) requires the movant to show that "the class is so numerous that joinder of all class members is impracticable."  "[N]umerosity is presumed where a putative class has forty or more members."  Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 252 (2d Cir. 2011) (parenthetically quoting Consol. Rail Corp. v. Town of Hyde Park, 47 F.3d 473, 483 (2d Cir. 1995)).

The Plaintiffs assert — and the Defendants concede — that this proposed class meets the numerosity requirement because the Defendants have provided the Plaintiffs with a list of at least

seventy-two individuals who they employed in New York within the past six years.  (See Romero Decl., Dkt. No. 42–9, Ex. H; the Defs.' Opp'n Mem. of Law, Dkt. No. 45, at 12.)

Accordingly, the Court finds that the Plaintiffs have satisfied the numerosity requirement. See Fonseca v. Dircksen & Talleyrand Inc., No. 13 CIV. 5124 (AT), 2015 WL 5813382, at *2 (S.D.N.Y. Sept. 28, 2015) ("Plaintiffs assert — and Defendants do not dispute — that 'based on the list of [t]ipped [e]mployees who worked at the River Café from April 11, 2008 until April 11, 2014 . . . there are more than 180 potential [c]lass [m]embers.' . . . Numerosity, therefore, is satisfied."); Flores v. Anjost Corp., 284 F.R.D. 112, 124 (S.D.N.Y. 2012) ("Because the spreadsheet provides sufficient proof that there are well over 40 people in the proposed classes, I find that Plaintiffs have satisfied the numerosity requirement.").

**2. Commonality**

As noted above, to satisfy Rule 23(a)(2), the movant must demonstrate that "there are questions of law or fact common to the class."

The Supreme Court in Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 131 S. Ct. 2541, 2551, 180 L. Ed. 2d 374 (2011) ruled that to show commonality, it is not enough for the movant to allege that the proposed class members share common questions, rather he or she must show that the classwide proceeding itself will "generate common answers apt to drive the resolution of the litigation."  Id. (quoting Nagareda, Class Certification in the Age of Aggregate Proof, 84 N.Y.U. L. Rev. 97, 132 (2009)); see also Sykes v. Mel S. Harris & Associates LLC, 780 F.3d 70, 80 (2d Cir. 2015) ("The Supreme Court has recently clarified the commonality requirement under Rule 23(a). 'Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury. This does not mean merely that they have all suffered a violation of the same provision of law.'") (quoting Dukes, 131 S. Ct. at 2551).

26

The Court in Dukes suggested that in the context of discrimination class actions, there are two ways of establishing that class members' discrimination claims are "capable of classwide resolution."  Id. at 2553.  First, the movant can show that the employer used "a biased testing procedure to evaluate both applicants for employment and incumbent employees."  Id.  Second, the movant can provide "[s]ignificant proof that an employer operated under a general policy of discrimination," which the Court suggested could be established by an explicit policy on the part of the employer or through evidence of a *de facto* policy consisting of some combination of statistical and anecdotal evidence that the class members were discriminated against.  See id. at 2553–55.

For example, the Court in Dukes noted that it had previously inferred that a defendant had a *de facto* policy of discrimination where the movants submitted "substantial statistical evidence of company-wide discrimination" and 40 affidavits describing "specific accounts of racial discrimination," which represented "roughly one account for every eight members of the class." Id. at 2556.  By contrast, the Court found that the anecdotal evidence submitted by the plaintiffs in Dukes to be insufficient to establish a company-wide policy of gender discrimination because they "filed some 120 affidavits reporting experiences of discrimination — about 1 for every 12,500 class members — relating to only some 235 out of Wal–Mart's 3,400 stores." Id.

Although the ramifications of Dukes are still being litigated, some lower courts have interpreted Dukes in the context of wage and hour class actions, such as the one at issue here, to require movants to either show proof of an express company policy that violates wage and hour laws, or proof from which a court can infer that the defendant operated under a *de facto* policy to deny class members the wages to which they were entitled.  See Ruiz v. Citibank, N.A., 93 F. Supp. 3d 279, 289 (S.D.N.Y. 2015) ("Dukes suggested that in the absence of an express

company policy that violated employee-plaintiffs' rights, plaintiffs could nonetheless obtain

class certification to challenge a practice that had sufficiently pervaded the company that it had

become a de facto policy."); Gordon v. Kaleida Health, 299 F.R.D. 380, 402 (W.D.N.Y. 2014)

("Moreover, the defendants' official policies were that employees should record all hours

worked and that time worked during meal periods is considered paid time. Thus, the plaintiffs

were required to offer 'significant proof' of a *de facto* policy to deny payment for such work.");

Eng-Hatcher v. Sprint Nextel Corp., No. 07 CIV 7350, 2009 WL 7311383, at *6 (S.D.N.Y. Nov.

13, 2009) ("Plaintiffs must produce some 'quantum of evidence to satisfy the commonality and

typicality requirements, usually in the form of affidavits, statistical evidence, or both, tending to

show the existence of a class of persons affected by a company-wide policy or practice of

discrimination.'") (quoting Attenborough v. Constr. & Gen. Bldg. Laborers' Local 79, 238

F.R.D. 82, 95 (S.D.N.Y. 2006)).

For example, in Poplawski v. Metroplex on the Atl., LLC, No. 11-CV-3765 (JBW), 2012

WL 1107711, at *1 (E.D.N.Y. Apr. 2, 2012), a group of construction workers formerly employed

by construction and development corporations moved to certify a class action of between 40 and

160 workers on the basis of their claims alleging that their former employers "engaged in a

number of unfair labor practices, including refusing to pay time and a half when employees work

more than forty hours" and "refusing to pay laborers who worked more than ten hours an

additional hour of pay under New York's spread of hours requirement." Id. The court found

that the "evidence indicate[d] that the plaintiffs may be found to have been subject to a uniform

policy of unlawful labor practices" on the basis of three affidavits submitted by the named

plaintiffs stating that they were subjected to illegal wage practices and "witnessed their co-

workers working overtime, and that they believe that none were paid overtime premiums." Id. at

* 7–8.  Based on this evidence, the court found commonality to be satisfied irrespective of the

fact that "damages owed to each employee [would] require individual determinations."  Id. at *

8.

      Similarly in Lewis v. Alert Ambulette Serv. Corp., No. 11-CV-442, 2012 WL 170049

(JBW), at *1, 3 (E.D.N.Y. Jan. 19, 2012), a group of five individuals formerly employed by the

defendant-corporation as ambulance drivers sought to certify a Rule 23(b)(3) class premised on

allegations that the defendant violated New York State law by failing to pay them the minimum

wage, making improper deductions from their paychecks, and refusing to provide spread of

hours pay.  The court found that the plaintiffs had submitted enough evidence for the court to

infer the existence of a "uniform policy of unlawful labor practices" on the basis of affidavits

provided by the named plaintiffs supported by "timesheets indicating that both the named

plaintiffs and potential opt-in plaintiffs worked approximately twelve-hour days[.]"  Id. at 10–11;

see also Rosario v. Valentine Ave. Disc. Store, Co., No. 10 CV 5255 ERK LB, 2013 WL

2395288, at *6 (E.D.N.Y. May 31, 2013) (finding that a proposed class satisfied commonality

because the "Plaintiff has demonstrated that employees of the defendant stores were prevented

from documenting the full number of hours they worked, and that because they were either paid

a flat rate or paid based on the number of hours they were permitted to record, the employees

were denied the minimum wage and overtime premiums required by NYLL law"); Flores v.

Anjost Corp., 284 F.R.D. 112, 126 (S.D.N.Y. 2012) ("Defendants' lack of familiarity with the

concept of spread of hours wages, along with Plaintiffs' affidavits and pay stubs showing that

such payments were not made, is amenable to resolution in a class action.").

      In the present case, the Plaintiffs assert that the Defendants had a common practice of

underpaying their employees for overtime and spread of hours wages.  (The Pls.' Mem. of Law,

Dkt. No. 42–11, at 5.)  To establish the existence of such a practice, the Plaintiffs rely on the

testimony of Marconiti, the President and Chief Executive Officer of Harvest Bakery:

> Q. Mr. Marconti, am I correct that prior to the commence of this lawsuit, that
> none of the hourly employees at Harvest Bakery were paid time and one half their
> regular rate of pay for hours worked in excess of forty?
> […]
> A. Yes.

(Marconti Dep., Romero Decl., Ex. A, at Tr. 40:15–41:6.).  In addition, they offer declarations

and testimony of the named Plaintiffs and Galvez, all of whom stated that they worked over

forty-hours in every work-week and were not paid overtime wages.  (See Rivera Dep., Zabell

Decl., Ex. M, at Tr. 52:16–54:3; Rivera Decl., Dkt. No. 42–10, at ¶¶ 5; Roldan Decl., Dkt. No.

15–3, at ¶ 8; Quintanilla Dep., Zabell Decl., Ex. N, at Tr. 16:6–9; Galvez Decl., Dkt. No. 50-1, at

¶ 9.)  Further, they provide the time reports of the three named Plaintiffs, which appear to

corroborate their claims that they often worked in excess of forty hours per week.  (See Romero

Decl., Dkt. No. 42, Exs. E–G.)

     The fact that the Chief Executive Officer of Harvest Bakery admitted in his deposition

that his company did not pay overtime wages to employees would, by itself, give rise to the

inference of a common *de facto* illegal policy with respect to overtime.  See Ruiz, 93 F. Supp. 3d

at 289 ("To prove such [*de facto*] policies, plaintiffs could present evidence of the

implementation or recognition of these *sub silentio* policies at the senior management level, but

such smoking guns are also quite rare.") (emphasis added).  The additional evidence provided by

the named Plaintiffs in the form of testimony and time records bolsters the Plaintiffs' contention

that the Defendants engaged in a common practice of not paying workers overtime wages.

     The evidence of a common illegal practice with respect to spread of hours wages is not as

robust.  The issue of spread of hours is not mentioned in the excerpts of Marconti's testimony

offered by the parties, nor in the declarations of the named Plaintiffs.  Instead, the Plaintiffs rely

solely on the time reports showing that they regularly worked more than ten hours per day.  (See

the Pls.' Mem. of Law, Dkt. No. 41–11, at 3; see also Romero Decl., Dkt. No. 41, Exs. E–G.)

     Although this evidence is questionable, when in viewed in light of the evidence

demonstrating that the Defendants lacked a formal payroll process and did not pay employees for

overtime, the Court finds that the Plaintiffs have produced enough evidence to show that the

Defendants engaged in a common practice of denying employees spread of hours and overtime

wages.  See Lewis, 2012 WL 170049 at *10 (finding a common illegal practice with respect to

both spread of hours and overtime based on affidavits of the named plaintiff identifying the

"illegal wage practices of defendant" and "timesheets indicating that both the named plaintiffs

and potential opt-in plaintiffs worked approximately twelve-hour day."); Flores v. Anjost Corp.,

284 F.R.D. 112, 125 (S.D.N.Y. 2012) ("'[C]laims by workers that their employers have

unlawfully denied them wages to which they were legally entitled have repeatedly been held to

meet the commonality prerequisite for class certification.'") (quoting Espinoza v. 953 Associates

LLC, 280 F.R.D. 113, 127 (S.D.N.Y. 2011)).

     The Defendants do not deny that they did not generally pay their employees overtime or

spread of hours wages.  (See the Defs.' Opp'n Mem. of Law, Dkt. No. 45, at 13–14.)  Rather,

they assert that the Plaintiffs have failed to establish commonality because the three named

Plaintiffs had "differing employment schedules," and therefore, determining whether they

worked overtime hours will require a "highly individualized" inquiry.  (See id.)  Again, the

Defendants' argument misses the mark.

     It is well-established that "the need for an individualized determination of damages

suffered by each class member generally does not defeat the requirement."  Whitehorn v.

Wolfgang's Steakhouse, Inc., 275 F.R.D. 193, 199 (S.D.N.Y. 2011) (quoting Padilla v. Maersk Line, Ltd., 271 F.R.D. 444, 448 (S.D.N.Y. 2010)); see also Ramirez v. Riverbay Corp., 39 F. Supp. 3d 354, 364 (S.D.N.Y. 2014) ("[I]t is axiomatic that '[t]he commonality requirement may be met when individual circumstances of class members differ,' as long as class members' 'injuries derive from a unitary course of conduct.'") (quoting Espinoza, 280 F.R.D. at 127); Poplawski, 2012 WL 1107711 at *8 ("While damages owed to each employee will require individual determinations, this computation issue does not destroy commonality.").

This is particularly true in overtime and spread of hours cases because damages can be determined through "mechanical calculations based on payroll records."  Ramirez, 39 F. Supp. 3d at 364; see also Morris v. Alle Processing Corp., No. 08CV-4874 JMA, 2013 WL 1880919, at *11 (E.D.N.Y. May 6, 2013) ("Although, the spread of hours compensation to which an individual is entitled will require an inquiry into the number of hours the individual worked and his rate of pay, such damages-related inquiries are 'mechanical' and do 'not threaten to overwhelm the litigation with individual factual determinations.'") (quoting Flores, 284 F.R.D. at 126–27).

Thus, a difference in the number of hours worked by the named Plaintiffs goes primarily to the issue of damages and therefore, does not defeat commonality, as the Defendants contend. See Spencer v. No Parking Today, Inc., No. 12 CIV. 6323 (ALC)(AJP), 2013 WL 1040052, at *16 (S.D.N.Y. Mar. 15, 2013) ("That some parking assistants may have worked more hours than others because they 'maintain complete control over their own work schedule' or 'keep track of their own hours' does not implicate the commonality determination, but rather goes to damages."), report and recommendation adopted, No. 12 CIV. 6323 (ALC)(AJP), 2013 WL 2473039 (S.D.N.Y. June 7, 2013); Whitehorn, 275 F.R.D. at 199 ("[The defendants] argue only

32

that the job duties and thus the projected shift hours differ among the different types of tipped employees at the three locations. This argument boils down to a concern that damages among class members will differ.").

Accordingly, because the class members' claims all derive from the same compensation policies, the Court finds that commonality has been satisfied. See Shahriar v. Smith & Wollensky Rest. Grp., Inc., 659 F.3d 234, 252 (2d Cir. 2011) ("[W]e conclude that the District Court properly found there to be questions of law or fact common to the class, Rule 23(a)(2), since the Plaintiffs' NYLL class claims all derive from the same compensation policies and tipping practices of Park Avenue."); Ramirez, 39 F. Supp. 3d at 364 ("The evidence in this case supports the existence of a RiverBay-wide payroll policy that was the reason for the Subclass members' alleged injuries under the NYLL, and the commonality requirement is therefore satisfied for Subclass 1.").

### 3. Typicality

As noted, Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." This requirement is satisfied "when each class member's claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." Robidoux v. Celani, 987 F.2d 931, 936 (2d Cir. 1993). "[M]inor variations in the fact patterns underlying individual claims" does not defeat typicality. Id. at 937. However, "'class certification is inappropriate where a putative class representative is subject to unique defenses which threaten to become the focus of the litigation.'" Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 59 (2d Cir. 2000) (quoting Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., 903 F.2d 176, 180 (2d Cir.1990)).

The Supreme Court in <u>Dukes</u> emphasized that in "in certain 'context[s] . . . '[t]he commonality and typicality requirements of Rule 23(a) tend to merge.  Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.'" <u>Sykes v. Mel S. Harris & Associates LLC</u>, 780 F.3d 70, 80 (2d Cir. 2015) (alterations in original) (quoting <u>Dukes</u>, 131 S. Ct. at 2551 n. 5).

The Plaintiffs assert that the proposed class meets the typicality requirement for similar reasons that the class meets the commonality requirement — namely, "the named Plaintiffs' claims and the proposed class members' claims arise from the same course of conduct[,] the Defendants' alleged practice of failing to pay overtime at the statutory rate."  (The Pls.' Reply Mem. of Law, Dkt. No. 49, at 12.)

However, the Defendants assert that typicality is not satisfied because (i) the named Plaintiffs Roldan and Rivera are subject to "unique defenses" because the two of them worked another job during some of the months they worked at Harvest Bakery, and therefore, they "could not have regularly worked in excess of forty (40) hours in single workweeks"; and (ii) the named Plaintiff Quintanilla will be subject to a unique defense because he signed a form acknowledging that his overtime rate of pay was $12.75.  (The Defs.' Opp'n Mem. of Law, Dkt. No. 45, at 15–16.)  Again, the Court disagrees.

Where, as here, a plaintiff provides proof of a common policy or practice on the part of the defendant to underpay its workers, courts frequently find typicality to be satisfied for largely the same reasons that they find commonality to be satisfied.  That is because the existence of a common policy suggests that the named representatives and the class members suffered similar

34

injuries as a result of the same policy and therefore, their claims are typical.  See Shahriar, 659 F.3d at 252 ("Plaintiffs also submitted payroll records produced by Defendants that show a common policy and practice of not paying the spread of hours premium. We conclude that the District Court properly found the elements of commonality and typicality satisfied."); Morris, 2013 WL 1880919 at *9 ("The Court finds that plaintiffs have satisfied the commonality and typicality requirements. The named plaintiffs' claims and the proposed class members' claims arise from the same course of conduct [defendants' practice and policy of failing to pay wages and overtime], raise common issues of law and fact [inter alia, whether defendants' improperly shaved time from records, refused to pay for time spent donning and doffing uniforms, failed to pay time and half for all hours worked over forty, and failed to pay spread of hours wages], and are based on the same legal theories [violations of NYLL]."); Flores, 284 F.R.D. at 126 ("Thus, because Defendants have effectively conceded that Plaintiffs raise common questions about Defendants' general corporate wage policies, they have adequately demonstrated commonality and typicality for the Tipped Employee Class.")

In the present case, the Plaintiffs and the class members are all non-exempt hourly employees whose claims arise from the same alleged compensation practices by the Defendants and are based on the same legal theories — namely, that the Defendants failed to pay them overtime and spread of hours wages in violation of the NYLL.  Thus, the Court finds that the Plaintiffs' claims are typical of the other class members' claims.

The fact that Rivera and Roldan worked a second job during several months of their employment at Harvest Bakery is essentially an argument about the amount of hours they worked, which goes to the issue of damages.  As with commonality, differences among class members with regard to the amount of their individual damages do not constitute "unique

defenses" that defeat typicality.  See Mendez v. U.S. Nonwovens Corp., No. 12CV5583 (ADS) (SIL), 2016 WL 231231, at *24 (E.D.N.Y. Jan. 15, 2016) (Spatt, J) ("And, while some class members may not be entitled to spread of hours wages because they are not minimum wage employees or they did not work a spread of hours in excess of ten hours on a particular day, those issues can be addressed easily by resorting to the Defendants' payroll records."); Ramirez, 39 F. Supp. 3d at 365 ("To the extent that the defendants emphasize the individualized inquiries that may be necessary to establish liability and damages, any such inquiries do not defeat a finding that the named plaintiffs' claims are typical of those of the proposed Subclass."); Espinoza, 280 F.R.D. at 128 ("Typicality is satisfied despite differences in damages arising from a disparity in injuries among the class members").

Further, the fact that on October 22, 2013, Quintanilla signed a form indicating that his overtime rate was $12.75 per hour is not the type of fact that will "threaten to become the focus of the litigation."  For example, had the Defendants produced payroll stubs indicating that they paid Quintailla for overtime hours, that evidence would likely render his claims weaker than the claims of other class members and thereby, undermine typicality.  However, a form acknowledging Quintanilla's overtime rate, which was signed nearly two years after he began his employment at Harvest Bakery, does not establish that he was paid overtime, particularly in the face of representations by the Defendants that they did not pay any employees overtime during that period.  Therefore, the Court does not find that Quintanilla is subject to a "unique defense that would threaten to become the focus of the litigation," as the Defendants contend.  See Whitehorn, 275 F.R.D. at 200 ("The differences cited by the Defendants do not 'undermine the conclusion that each putative class member's claims arise from the same course of events and each class member will make a similar legal argument to demonstrate liability.' . . . .

Accordingly, the named representatives' claims are sufficiently typical of those of the proposed class as a whole.") (quoting Ansoumana v. Gristede's Operating Corp., 201 F.R.D. 81, 87 (S.D.N.Y. 2001)).

Accordingly, the Court finds that the Plaintiffs have established their claims are typical of the claims of the other class members.

### 4. Adequacy of Representation

Rule 23(a)(4) also requires the movant to demonstrate that "the representative parties will fairly and adequately protect the interests of the class."

"Generally, adequacy of representation entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and 2) plaintiff's attorneys are qualified, experienced and able to conduct the litigation." Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp., 222 F.3d 52, 60 (2d Cir. 2000)

The Supreme Court has suggested that the inquiry into whether the named plaintiff's interest are antagonistic to the interests of other class members also tends to merge with the requirements of commonality and typicality. See Dukes, 131 S. Ct. at 2551 n. 5 ("'[Typicality and commonality] . . . also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest.'") (alterations supplied) (quoting General Telephone Co. of Southwest v. Falcon, 457 U.S. 147, 157–158, n. 13, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982)).

The Plaintiffs assert that they would be adequate representatives because they "share identical claims with proposed class members, [they] are knowledgeable about the claims in this action[,] and [they] ha[ve] no[] conflict[s] of interest with any of the potential class members." (The Pls.' Mem. of Law, Dkt. No. 42-11, at 7.)

In response, the Defendants assert that the named Plaintiffs will not be adequate class representatives because they are subject to unique defenses that they worked fewer hours than other class members and received Rule 68 offers of Judgment, while other class members did not.  (The Defs.' Opp'n Mem. of Law, Dkt. No. 45, at 17.) Again, the Court agrees with the Plaintiffs' contention.

For the reasons already discussed, the Court finds that the Plaintiffs and the other class members have shown evidence that they were subject to a common illegal compensation policy on the part of the Defendants**;** rely on similar legal theories to prove their NYLL claims**;** and have the same interest in maximizing the amount of class recovery.  Accordingly, the Court finds that the Plaintiffs' interests are not antagonistic to the interests of other absent class members. See Garcia v. Pancho Villa's of Huntington Vill., Inc., 281 F.R.D. 100, 107 (E.D.N.Y. 2011) ("[B]oth Garcia and J. Amaya, like the putative class, allege that they were not paid overtime compensation for hours worked in excess of forty per week, were not paid minimum wage and were not provided spread-of-hours compensation for hours worked in excess of ten per day. 'The fact that plaintiffs' claims are typical of the class is strong evidence that their interests are not antagonistic to those of the class; the same strategies that will vindicate plaintiffs' claims will vindicate those of the class.'") (quoting Damassia v. Duane Reade, Inc., 250 F.R.D. 152, 158 (S.D.N.Y. 2008)); Whitehorn, 275 F.R.D. at 200 ("There is no dispute that 'the proposed class representative[s] . . . have an interest in vigorously pursuing the claims of the class, and . . . have no interests antagonistic to the interests of other class members.'") (alterations in original) (quoting Denney v. Deutsche Bank AG, 443 F.3d 253, 268 (2d Cir. 2006)).

As already discussed, the Defendants' assertion that the fact that the Plaintiffs may have worked fewer hours than other class members goes to the issue of damages and does not

demonstrate that the Plaintiffs' interests will be antagonistic to other class members.  Nor does

the fact that they received Rule 68 offers of judgment**.**  That is because the named Plaintiffs did

not accept those offers and therefore, nothing will prevent them from vigorously pursuing the

class's claims.  Moreover, as discussed above, the mere fact that the named Plaintiffs received

Rule 68 offers does not render their claims moot, nor can evidence of their unaccepted offers be

admitted at trial.  See Fed. R. Civ. P. 68(b). Thus, the Plaintiffs are not susceptible to any kind of

unique defense because they rejected the Defendants' Rule 68 offers of judgment, as the

Defendants contend.

The Plaintiffs also assert that Peter A. Romero ("Romero"), Esq., their counsel, is an

experienced labor and employment attorney and has represented classes of this size in previous

cases.  (See Romero Decl., Dkt. No. 41–1, at ¶ 12.)  The Defendants do not dispute these

qualifications.  Accordingly, based on the undisputed representations by Romero as to his firm's

qualifications, the Court also finds that Romero meet**s** the requirements of Rule 23(a)(4).

In sum, the Court finds that both the named Plaintiffs and the Plaintiffs' counsel will be

adequate representatives of the proposed class.

### 5. Predominance

Rule 23(b)(3) requires the movant to demonstrate that "the questions of law or fact

common to class members predominate over any questions affecting only individual members."

"The predominance requirement is satisfied 'if resolution of some of the legal or factual

questions that qualify each class member's case as a genuine controversy can be achieved

through generalized proof, and if these particular issues are more substantial than the issues

subject only to individualized proof.'" In re U.S. Foodservice Inc. Pricing Litig., 729 F.3d 108,

118 (2d Cir. 2013) (quoting <u>UFCW Local 1776 v. Eli Lilly & Co.</u>, 620 F.3d 121, 131 (2d Cir. 2010)).

 "Like the commonality inquiry, a court examining predominance must assess (1) the 'elements of the claims and defenses to be litigated'; and (2) 'whether generalized evidence could be offered to prove those elements on a class-wide basis or whether individualized proof will be needed to establish each class member's entitlement to relief.'" <u>Johnson v. Nextel Commc'ns Inc.</u>, 780 F.3d 128, 138 (2d Cir. 2015) (quoting Joseph M. McLaughlin, <u>McLaughlin on Class Actions</u> § 5:23 (11th ed.2014)).  However, "[p]redominance requires a further inquiry . . . . into whether the common issues can profitably be tried on a classwide basis, or whether they will be overwhelmed by individual issues." <u>Id.</u>  Accordingly, Rule 23(b)'s predominance requirement is more demanding than Rule 23(a)'s commonality requirement. <u>Comcast Corp. v. Behrend</u>, 133 S. Ct. 1426, 1432, 185 L. Ed. 2d 515 (2013) ("Rule 23(b)(3)'s predominance criterion is even more demanding than Rule 23(a)").

 Furthermore, the Second Circuit in <u>Roach v. T.L. Cannon Corp.</u>, 778 F.3d 401, 405 (2d Cir. 2015) recently re-affirmed its prior holdings that though relevant, "'the fact that damages may have to be ascertained on an individual basis is not sufficient to defeat class certification' under Rule 23(b)(3)." <u>Id.</u> (quoting <u>Seijas v. Republic of Argentina</u>, 606 F.3d 53, 58 (2d Cir. 2010)).

 The Plaintiffs assert that the proposed class satisfies the predominance requirement because the Defendants' payroll practices are "susceptible to common proof" and "documentary evidence, such as the employee punch cards and payroll records, could be used to help resolve issues of [the] Defendants' liability."  (The Pls.' Reply Mem. of Law, Dkt. No. 49, at 13.)

The Defendants assert that the proposed class does not meet the predominance requirement because "[the] Plaintiffs fail to provide proof, convincing or other, of the 'alleged practice of underpayment.'"  (The Defs.' Opp'n Mem. of Law, Dkt. No. 45, at 18.)  Again, the Court disagrees.

As already discussed, Marconti testified that there was no process in place to pay employees overtime.  (Marconti Dep., Romero Decl., Ex. A, at Tr. 40:15–41:6.).  All of the named Plaintiffs have submitted declarations stating that they worked over ten hours per day and were not paid additional wages.  (See Rivera Dep., Zabell Decl., Ex. M, at Tr. 52:16–54:3; Rivera Decl., Dkt. No. 42–10, at ¶¶ 5; Roldan Decl., Dkt. No. 15–3, at ¶ 8; Quintanilla Dep., Zabell Decl., Ex. N, at Tr. 16:6–9; Galvez Decl., Dkt. No. 50-1, at ¶ 9.).  In addition, the Plaintiffs offer copies of their time records which appear to corroborate their statements about the amount of hours they regularly worked.  (See Romero Decl., Dkt. No. 42, Exs. E–G.)

Furthermore, the proposed class in this case consists of at most seventy-five current and former employees who worked for one factory, under one supervisor.  Thus, the quantum of evidence required to establish that the proposed class members were subject to the same illegal payroll policy is significantly less than the quantum evidence to establish a common illegal policy in a large nation-wide class action, such as the one at issue in Dukes.  Compare Dukes, 131 S. Ct. at 2556 n. 9 ("A discrimination claimant is free to supply as few anecdotes as he wishes. But when the claim is that a company operates under a general policy of discrimination, a few anecdotes selected from literally millions of employment decisions prove nothing at all."); with Chen-Oster v. Goldman, Sachs & Co., 877 F. Supp. 2d 113, 119 (S.D.N.Y. 2012) ("Plaintiffs do not number in the millions; Plaintiffs all worked at — and the allegations all center around —Goldman's New York office; Plaintiffs were all members of a circumscribed

41

category of Goldman employees; and Plaintiffs do not challenge literally millions of employment decisions. These factual distinctions are critical. Here, in contrast to the scattershot claims in Dukes, the possibility exists that class members' claims will be based on a 'common contention,' id. at 2551, thereby meeting the commonality requirement.").

Based on this record, the Court finds that the Plaintiffs have submitted sufficient evidence that the Defendants had a common practice of failing to pay their employees overtime and spread of hours wages.

Courts in this Circuit have held that the existence of such a common compensation practice will help to establish the Defendants' liability with respect to each class member's overtime and spread of hours claims. See Rosario, 2013 WL 2395288 at *9 (finding that a proposed class satisfied predominance because "[w]hether defendants maintained unlawful payment practices can be established through the employees' testimony, the testimony of defendant Srour, and by the individual managers. The question of whether class members were properly paid can be addressed by class-wide proof regarding the accuracy of defendants' payroll records, defendants' financial records, and testimony"); Morris, 2013 WL 1880919 at *12 ("[P]redominance is satisfied where, as here, the 'central issue' is whether defendants had a 'uniform policy or practice' of denying wages for all hours worked, overtime wages, and spread of hours compensation.") (quoting Garcia, 281 F.R.D. at 108); Spencer, 2013 WL 1040052 at *26 ("The legality or illegality of defendants' practices and procedures utilized to implement their no overtime policy are susceptible to common proof, thus satisfying the predominance requirement.").

The Court will have to undertake individual inquiries to determine the amount of hours each class member worked.  However, in wage and hour cases, such as this, the individual

inquiries are easily resolved because they will likely involve simple mechanical calculations based on the defendant's payroll records.   See Ramirez, 39 F. Supp. 3d at 372-73 ("Liability on the comp time claims under the NYLL is likely to turn on the classwide issue of whether RiverBay had a corporate policy of paying comp time in lieu of cash wages for overtime hours. If the plaintiffs establish that RiverBay had such a policy, determining whether this resulted in unpaid overtime liability under the NYLL is likely to involve little more than arithmetic."); Poplawski, 2012 WL 1107711 at *11 ("Although, as already noted, each class member will have different damage claims depending on the length and time of employment, such individualized questions are easily manageable."); Whitehorn, 275 F.R.D. at 200 ("Although individualized determinations must be made as to the amount of wages, overtime, and spread of hours pay each Plaintiff is due based on the hours projected for their shift and the number of hours worked, 'common legal issues related to the members' entitlement to overtime wages and the proper measure of such wages clearly predominate over these relatively simple, mechanical calculations.'") (quoting Padilla v. Maersk Line, Ltd., 271 F.R.D. 444, 450 (S.D.N.Y. 2010)); Alonso v. Uncle Jack's Steakhouse, Inc., No. 08 CIV. 7813 DAB, 2011 WL 4389636, at *5 (S.D.N.Y. Sept. 21, 2011) ("Here, although individual inquiries may be necessary as to the amount of hours worked for purposes of the overtime claim, all other aspects of this case are subject to generalized proof and applicable to the class as a whole.").

The damage calculations in this case may be more difficult than in the cases described above because the Defendants paid their employees in cash and checks.  (See the Defs.' Responses to Rivera's First Set of Interrogs., Dkt. No. 42–3, at ¶ 12; the Defs.' Responses to Roldan's First Set of Interrogs., Dkt. No. 42–4, at ¶ 2; the Defs.' Responses to Quintanilla's First Set of Interrogs., Dkt. No. 42–5, at ¶ 11.)  Thus, the Court may not be able to rely solely on

documentary evidence to establish how much each individual class member was paid for their hours.

However, the Defendants do not raise this issue in their briefs.  Indeed, the Defendants contend that the Rule 68 offers of judgment that they served on each of the named Plaintiffs "constituted all unpaid wages, costs, and fees" owed to them.  (See Zabell Decl., Dkt. No. 44, at ¶¶ 2–4.)  These statements suggest that the Defendants have documentary records from which the Court may be able to easily calculate how many hours each class member worked**;** what they were paid**;** and what the Defendants owe to them in overtime and spread of hours wages, if anything.

Accordingly, the Court finds that individual determinations as to each class member's damages would not threaten to become a focus of this litigation.  And, as the key issue in this case — namely, whether the Defendants paid their employees overtime or spread of hours wages — is subject to class-wide proof, the Court finds that the proposed class satisfies predominance.

### 6. Superiority

The last question that the Court must address under Rule 23(b)(3) is whether "class action is superior to other available methods for the fair and efficient adjudication of the controversy."

"Rule 23(b)(3) class actions can be superior precisely because they facilitate the redress of claims where the costs of bringing individual actions outweigh the expected recovery."  In re U.S. Foodservice Inc. Pricing Litig., 729 F.3d 108, 130 (2d Cir. 2013); see also In re Sinus Buster Products Consumer Litig., No. 12-CV-2429 (ADS)(AKT), 2014 WL 5819921, at *6 (E.D.N.Y. Nov. 10, 2014) (Spatt, J) ("'Class treatment is often deemed superior in negative value cases, in which each individual class member's interest in the litigation is less than the anticipated cost of litigating individually.'") (quoting In re Advanced Battery Techs., Inc. Sec.

Litig., 298 F.R.D. 171, 182 (S.D.N.Y. 2014)); Whitehorn v. Wolfgang's Steakhouse, Inc., 275 F.R.D. 193, 200 (S.D.N.Y. 2011) ("Courts routinely hold that a class action is superior where, as here, potential class members are aggrieved by the same policy, the damages suffered are small in relation to the expense and burden of individual litigation, and many potential class members are currently employed by Defendant.").

Here, the Plaintiffs assert that a class action is superior to other available methods of adjudicating the class members' claims because the potential for recovery for each individual class member is relatively small.  (The Pls.' Reply Mem. of Law, Dkt. No. 49, at 14.)  Moreover, the Plaintiffs assert that many of the class members are foreign born and have limited writing skills, and therefore, they would be discouraged from brining individual claims should this motion be denied.  (See id.)

The Defendants do not address superiority separately in their papers.  Indeed, the fact that the Defendants' offers of judgment to each named Plaintiff did not exceed $8,600 speaks to how low each class member's individual damages could be relative to the costs of litigating their claims individually.  (See Zabell Decl., Exs. A–D.)

Accordingly, the Court finds that this case is precisely the type of "negative value" case for which the class action mechanism was designed.  See Amchem Products, Inc. v. Windsor, 521 U.S. 591, 617, 117 S. Ct. 2231, 2246, 138 L. Ed. 2d 689 (1997) ("'The policy at the very core of the class action mechanism is to overcome the problem that small recoveries do not provide the incentive for any individual to bring a solo action prosecuting his or her rights. A class action solves this problem by aggregating the relatively paltry potential recoveries into something worth someone's (usually an attorney's) labor.") (quoting Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (1997)); Morris, 2013 WL 1880919 at *14 ("Here, the proposed class

members are significantly numerous and possess relatively small individual claims. Moreover,

there is reason to believe that because many class members are currently employed by Alle

and/or of foreign descent, they may fear reprisal and lack familiarity with the American legal

system. As a result, not only would a class action in the instant case allow for a 'more cost-

efficient and fair litigation of common disputes' than individual actions, but it is likely the only

device by which many of the proposed class members would obtain relief.") (quoting Garcia,

281 F.R.D. at 108).

Accordingly, the Court finds the proposed class meets the superiority requirement.

**7. The Appointment of Class Counsel**

Fed. R. Civ. P. 23(g) states that "a court that certifies a class must appoint class counsel."

In appointing counsel, the Rule also requires the court to consider:

> (i) the work counsel has done in identifying or investigating potential claims in
> the action; (ii) counsel's experience in handling class actions, other complex
> litigation, and the types of claims asserted in the action; (iii) counsel's knowledge
> of the applicable law; and (iv) the resources that counsel will commit to
> representing the class.

Fed. R. Civ. P. 23(g).

Here, Romero has submitted an affidavit describing his experience and resources, both of

which the Court has already concluded were sufficient in the context of assessing his adequacy

as a class representative.  Accordingly, the Court also finds that Romero satisfies the standard set

forth in Rule 23(g) and appoints him as class counsel.

### III. CONCLUSION

For the foregoing reasons, the Court grants the Plaintiffs' motion and certifies a class

with the following definition, "all current and former non-exempt hourly employees who worked

for the Harvest Bakery in the State of New York at any time from the six (6) years prior to the

filing of this complaint to the entry of judgment in the case."  In addition, the Court appoints the

named Plaintiffs and Romero as class representatives.


**SO ORDERED.**
Dated: Central Islip, New York
January 25, 2016



 _/s/ Arthur D. Spatt_
ARTHUR D. SPATT
United States District Judge

47